

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

EDWIN HAYDEN,                §
                             §
        Plaintiff,           §
                             §
VS.                          §   NO. 4:17-CV-452-A
                             §
THE CITY OF FORT WORTH,      §
                             §
        Defendant.           §

MEMORANDUM OPINION AND ORDER

Came on for consideration the motion of defendant, City of Fort Worth, to dismiss plaintiff's first amended complaint. The court, having considered the motion, the response of plaintiff, Edwin Hayden, the record, and applicable authorities, finds that the motion should be granted in part.

I.

Plaintiff's Claims

The operative pleading is plaintiff's first amended complaint[1] filed July 28, 2017. Doc.[2] 16. In it, he alleges:

Plaintiff is a police officer employed by defendant. Doc. 16 at 2, ¶ 6. In December 2015, he sought a position as a school resource officer at Chisholm Trail High School. Id., ¶ 12.

---

[1] Plaintiff filed his original complaint on June 2, 2017, naming as defendant "City of Fort Worth and Fort Worth Police Department" as a single entity. City of Fort Worth filed a motion to dismiss, noting among other things that its police department is not a legal entity subject to suit. The motion also pointed out many of the same defects discussed in the motion now under consideration. Rather than respond, plaintiff sought and was granted leave to amend.

[2] The "Doc. __" reference is to the number of the item on the docket in this action.

Lieutenant Elgin ("Elgin") told plaintiff that "they" were going to place him at the school and that the school wanted him. Id., ¶ 13. Shortly after that meeting, plaintiff's supervisor, Sergeant Wisdom ("Wisdom"), told plaintiff he had already promised the position to Officer Meyer a couple of months earlier. Id., ¶ 14. Officer Myers is a younger, Caucasian male. Id. at 3, ¶ 15. Wisdom and Elgin promised plaintiff that he would be given the position when it next became available. Id., ¶¶ 17, 18. Officer Myers left the position in February 2016 and plaintiff expressed his interest by email and told Elgin he wanted the position. Id., ¶¶ 19, 21-22. Defendant denied plaintiff the position and awarded it to another Caucasian officer. Id., ¶ 25; id. at 4, ¶ 29. The position at Chisholm Trail was a better position than the one plaintiff held for a number of reasons. Id., ¶¶ 30-40. Plaintiff complained several times on the basis of age and race discrimination. Id. at 5, ¶¶ 42-45. Plaintiff was retaliated against because of his complaints by being denied a better position during the summer. Id., ¶¶ 47-51; id. at 6, ¶¶ 52-62. On or about June 15, 2016, plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). Id. at 7, ¶ 64. On or around June 22, 2016, defendant mandated that plaintiff enter the

2

Employee Assistance Program ("EAP"), giving him conflicting reasons for doing so. Id., ¶¶ 65, 66.

Plaintiff asserts claims for race discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"), and 42 U.S.C. §§ 1981 & 1983. He also asserts a claim for age discrimination and retaliation under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-34 ("ADEA").

II.

Grounds of the Motion

Defendant maintains that plaintiff has failed to state any plausible claims against it. In particular, defendant says that plaintiff has failed to state a claim under section 1981 because he has not alleged that he was subjected to discrimination or retaliation based on an official policy or custom of defendant. Second, plaintiff has failed to allege facts to support a plausible claim under Title VII. And, third, plaintiff has failed to allege facts to support a plausible claim under the ADEA.

III.

Rule 8(a)(2) Pleading Standards

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, in a general way, the applicable standard of pleading. It requires that a complaint contain "a short and plain statement

of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and ellipsis omitted). Although a complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the plaintiff to do more than simply allege legal conclusions or recite the elements of a cause of action. Twombly, 550 U.S. at 555 & n.3. Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Moreover, to survive a motion to dismiss for failure to state a claim, the facts pleaded must allow the court to infer that the plaintiff's right to relief is plausible. Iqbal, 556 U.S. at 678. To allege a plausible right to relief, the facts pleaded must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient. Id. In other words, where the facts pleaded do no more than permit the court to infer the possibility of misconduct, the complaint has not

4

shown that the pleader is entitled to relief. Id. at 679. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

As the Fifth Circuit has explained: "Where the complaint is devoid of facts that would put the defendant on notice as to what conduct supports the claims, the complaint fails to satisfy the requirement of notice pleading." Anderson v. U.S. Dep't of Housing & Urban Dev., 554 F.3d 525, 528 (5th Cir. 2008). In sum, "a complaint must do more than name laws that may have been violated by the defendant; it must also allege facts regarding what conduct violated those laws. In other words, a complaint must put the defendant on notice as to what conduct is being called for defense in a court of law." Id. at 528-29.

IV.

Analysis

A. Sections 1981 & 1983

Section 1983 of Title 42, United States Code, provides the sole remedy for discrimination by persons acting under color of state law, i.e., for violations of § 1981. Oden v. Oktibbeha Cty., 246 F.3d 458, 463 (5th Cir. 2001). The law is clearly established that recovery against a municipality under § 1983 may

5

not be predicated on a theory of respondent superior. Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691 (1978); Evans v. City of Houston, 246 F.3d 344, 357 (5th Cir. 2001); Williams v. Luna, 909 F.2d 121, 123 (5th Cir. 1990). Liability may be imposed against a municipality only if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation. Connick v. Thompson, 563 U.S. 51, 60 (2011). Local governments are responsible only for their own illegal acts. Id. (quoting Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986)). Thus, plaintiffs who seek to impose liability on local governments under § 1983 must prove that action pursuant to official municipal policy caused their injury. Monell, 436 U.S. at 691. Specifically, there must be an affirmative link between the policy and the particular violation alleged. City of Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985). Thus, to establish municipal liability requires proof of three elements: a policymaker, an official policy, and a violation of statutory or constitutional rights whose moving force is the policy or custom. Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001).

The Fifth Circuit has been explicit in its definition of an "official policy" that can lead to liability on the part of a governmental entity, giving the following explanation in an

opinion issued en banc in response to a motion for rehearing in Bennett v. City of Slidell:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.
>
> Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

735 F.2d 861, 862 (5th Cir. 1984) (per curiam).

The general rule is that allegations of isolated incidents are insufficient to establish a custom or policy. Fraire v. City of Arlington, 957 F.2d 1268, 1278 (5th Cir. 1992); McConney v. City of Houston, 863 F.2d 1180, 1184 (5th Cir. 1989); Languirand v. Hayden, 717 F.2d 220, 227-28 (5th Cir. 1983). The "single incident exception" is extremely narrow and gives rise to municipal liability only if the municipal actor is a final policy-maker (as distinguished from decision-maker). Bolton v. City of Dallas, 541 F.3d 545, 548-49 (5th Cir. 2008).

Here, plaintiff conclusorily recites in his amended complaint that defendant's actions "were undertaken in accordance with an official municipal policy or custom in violation of 42 U.S.C. § 1983." Doc. 16 at 8, ¶ 80. However, despite his contention to the contrary, Doc. 18 at 3, plaintiff has not pleaded any facts to support the existence of a municipal policy or custom. Instead, he has only pleaded that:

> 26. Upon information and belief, Lt. Elgin and Sgt. Wisdom's superiors, the ultimate decision-makers with regard to transfers, approved Lt. Elgin's and Sgt. Wisdom's decisions.
>
> 27. As a matter of course, these types of decisions are run up the chain of command.

Doc. 16 at 3, ¶¶ 26-27. He also pleads that he "personally spoke to one of Lt. Elgin's and Sgt. Wisdom's superiors . . . about the transfer matter." Id. at 4, ¶ 28.

As recited, supra, an official policy is one that is officially adopted and promulgated by those with policy-making authority. Burge v. St. Tammany Parish, 336 F.3d 363, 369 (5th Cir. 2003). A custom is a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." Bennett, 735 F.2d at 862. Here, plaintiff has not identified any policy or custom. See Spiller v. City of Tex.

City, 130 F.3d 162, 167 (5th Cir. 1997). Nor has he identified any policy-maker as distinguished from a decision-maker. See Bolton, 541 F.3d at 548-59. And, he has not pleaded facts to show that any custom or policy was the moving force behind a violation of his federally protected rights. See Bd. of Cty. Commn'rs v. Brown, 520 U.S. 397, 404 (1997). Thus, plaintiff's claims based on a municipal policy or custom fail and must be dismissed.

B. Title VII

To make out a prima facie case of racial discrimination, plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the position; (3) he was subjected to an adverse employment action; and, (4) he was treated less favorably than similarly-situated individuals of another race, or replaced by a member of another race. Okoye v. Houston Health Science Center, 245 F.3d 507, 512-13 (5th Cir. 2001). An adverse employment action is an ultimate employment decision. Felton v. Polles, 315 F.3d 470, 486 (5th Cir. 2002). Ultimate employment decisions include hiring, firing, demoting, promoting, granting leave, and compensating. Thompson v. City of Waco, 764 F.3d 500, 503 (5th Cir. 2014). A transfer may constitute an ultimate employment decision only if the transfer, or its denial, can be objectively characterized as an effective promotion or demotion. Id. A purely lateral transfer, even if subjectively preferable,

9

is not an adverse employment action. <u>Munoz v. Seton Healthcare, Inc.</u>, 557 F. App'x 314, 320 (5th Cir. 2014). And, an employer's action does not rise to the level of adverse if it fails to have more than a tangential effect on a possible future ultimate employment decision. <u>Mota v. Univ. of Tex. Houston Health Sci. Ctr.</u>, 261 F.3d 512, 519 (5th Cir. 2001). Nevertheless, whether a position is objectively better or worse depends on factors such as whether the work is more interesting, whether it is viewed as more prestigious, whether it provides more room for advancement, whether the position is generally preferred over another one, and whether it provides greater responsibility or better job duties. <u>Alvarado v. Texas Rangers</u>, 492 F.3d 605, 613-14 (5th Cir. 2007).

To state a claim for retaliation under Title VII, plaintiff must allege that he participated in an activity protected by Title VII, his employer took an adverse employment action against him, and a causal connection exists between the protected activity and the adverse employment action. <u>McCoy v. City of Shreveport</u>, 492 F.3d 551, 557 (5th Cir. 2007). Adverse action is that which produces injury or harm. <u>Lopez v. Kempthorne</u>, 684 F. Supp. 2d 827, 862 (S.D. Tex. 2010). "[P]etty slights, minor annoyances, and simple lack of good manners are not actionable retaliatory conduct." <u>Id.</u> at 863. And, for there to be a causal connection, the employer must know about the employee's protected

activity. Manning v. Chevron Chem. Co., LLC, 332 F.3d 874, 883 (5th Cir. 2003).

Here, the court infers that plaintiff is a member of a protected class and that he was qualified for the position he sought. Plaintiff has alleged enough facts that a plausible case of discrimination based on race can be made out in that he alleges that he was denied a more prestigious position, which was filled by someone of another race. And, plaintiff alleges facts to show that he was adversely treated and suffered as a result of his complaints of discrimination as set forth in paragraphs 41-63 of his amended complaint. The court cannot discern, however, that plaintiff has stated a claim of retaliation with regard to his filing of a charge of discrimination with the EEOC. He has alleged no facts from which to infer retaliation based on the filing of the charge except for the proximity of the date of filing the charge and the mandate to enter the EAP. Because he does not allege that defendant even had notice of the filing of the charge at the time it mandated he enter the EAP, there is no basis for making such an inference.

C. Age Discrimination

A plaintiff alleging age discrimination must show either (1) direct evidence of age discrimination or (2) indirect evidence of age discrimination by showing a prima facie case, i.e., that (1)

11

he is a member of a protected class;(2) he was qualified for the position; (3) he was subjected to an adverse employment action; and (4) he was either replaced by someone outside the protected class, replaced by someone younger, or otherwise discriminated against because of his age. Palasota v. Haggar Clothing Co., 342 F.3d 569, 575-76 (5th Cir. 2003). Under the ADEA, plaintiff must prove that the adverse employment action would not have occurred but for his age. Reed v. Neopost USA, Inc., 701 F.3d 434, 440 (5th Cir. 2012). Claims are analyzed in the same manner as under Title VII. Mitchell v. Snow, 326 F. App'x 852, 854 (5th Cir. 2009). Although the Supreme Court has said that one need not plead a prima facie case to survive a motion to dismiss,[3] Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002), the elements are helpful in framing what constitutes an ADEA claim and whether plaintiff has alleged enough to raise a right to relief above the speculative level. Bell Atl., 550 U.S. at 555.

To establish a retaliation claim under the ADEA, plaintiff must show that (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment

---

[3]At least one court has questioned whether Swierkiewicz is still good law following more recent cases. Ellis v. City of Minneapolis, 860 F.3d 1106, 1112 (8th Cir. 2017).

action. Wooten v. McDonald Transit Assocs., Inc., 788 F.3d 490, 496-97 (5th Cir. 2015).

In this case, plaintiff has not alleged any facts from which the court could find a plausible case of age discrimination. The only time age is mentioned is in reference to the first time plaintiff expressed interest in the school resource officer position at Chisholm Trail High School. Doc. 16 at 3, ¶ 15. At that time, plaintiff was told that the position had already been promised to another officer, who happened to be younger than plaintiff. No discrimination is alleged to have occurred in that instance. Rather, the discrimination is alleged to have occurred after that officer left the position and plaintiff again applied. That time, the position went to "another Caucasian officer."[4] Id. at 4, ¶ 29. Age is not mentioned. Plaintiff has pleaded no facts to show either a direct case of age discrimination or a prima facie case of age discrimination. For example, plaintiff does not plead any facts to show that the age gap between him and any person alleged to have been treated more favorably was significant enough to support an inference of age discrimination. Jenkins v. City of San Antonio Fire Dep't, 784 F.3d 263, 268-69 (5th Cir. 2015)(citing cases holding that an age gap of up to

---

[4] The reference is confusing in that plaintiff never alleges his own race. Nevertheless, based on the earlier reference to the "younger, Caucasian male," the court infers that plaintiff is not of the Caucasian race.

four years is insufficient to support an inference of discrimination and that an age difference of five years is a close question).

As the Fifth Circuit has noted, there is no requirement that the underlying claim of discrimination be valid to support a claim of retaliation. Vadie v. Miss. State Univ., 218 F.3d 365, 374, n.24 (5th Cir. 2000); Nadeau v. Echostar, No. EP-12-CV-433-KC, 2013 WL 5874279, at *25 (W.D. Tex. Oct. 30, 2013). Plaintiff has alleged that he complained of discrimination based on age and as a result he was punished by being denied an opportunity to participate in better summer work. Doc. 16 at 5, ¶¶ 41-63. He has at least stated a claim of retaliation under the ADEA on this basis. As with the Title VII claim of retaliation, plaintiff has not alleged enough facts from which an inference can be drawn that he has a plausible retaliation claim based on the filing of his EEOC charge. Plaintiff does not even allege the basis for such charge.

V.

Order

The court ORDERS that defendant's motion to dismiss be, and is hereby, granted in part and plaintiff's claims based on 42 U.S.C. §§ 1981 and 1983, for retaliation under Title VII as a result of filing his EEOC charge, for discrimination under the

ADEA, and for retaliation under the ADEA as a result of the filing of his EEOC charge be, and are hereby, dismissed.

SIGNED September 11, 2017.

_____
JOHN McBRYDE
United States District Judge